IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| LARRY KROECK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UKG, INC, KRONOS INCORPORATED, )<br>)<br>Defendants. )<br>) | 2:22-CV-00066-CCW |

**OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Before the Court is UKG, Inc. and Kronos, Inc.'s Motion to Dismiss the Complaint.[1] ECF No. 22. After reviewing the Complaint, ECF No. 1, and the parties' briefing on the Motion to Dismiss, ECF Nos. 22–23, 28–29, 32, the Court will grant in part and deny in part the Motion to Dismiss. For the reasons set forth below, the Court will dismiss the Pennsylvania Minimum Wage Act ("PMWA") claim, the Fair Labor Standards Act ("FLSA") claim, and the negligence claim. The court will not dismiss the breach of contract claim.[2]

**I.     Background**

Larry Kroeck is a Pennsylvania resident, who is employed by West Penn Allegheny Health System, Inc. and Allegheny Health Network, Inc. (collectively, "the hospital"). ECF No. 1 ¶¶ 1, 12. He has an oral employment contract with the hospital to provide meals to inpatients and

---

[1] Previous Defendants West Penn Allegheny Health System, Inc. and Allegheny Health Network, Inc. were dismissed with prejudice pursuant to a stipulation of the parties. *See* ECF Nos. 25, 27. Therefore, the only remaining claims in this case are Counts I, II IV and VI as against UKG and Kronos.
[2] This Court has federal question jurisdiction over the FLSA claim under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims. Additionally, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

1

outpatients in the hospital cafeteria. *Id.* ¶ 12. If hospital staff worked beyond 40 hours, then the additional time would be compensable at an overtime premium rate. *Id.* ¶ 13. This overtime premium rate is calculated as "time and one-half" above the standard rate. *Id.* Work performed during the holidays is also compensable at a higher premium rate. *Id.*

The hospital outsources its payroll system to third-party providers, Defendants UKG, Inc. and Kronos, Inc. *Id.* ¶ 11. Defendants provide software to assist with timekeeping and other workforce management operations. ECF No. 23 at 1. UKG, Inc. is a business incorporated in Delaware, and Kronos, Inc. is a business incorporated in Massachusetts. ECF No. 1 ¶¶ 4-5.

From December 19, 2021, to January 2, 2022, Mr. Kroeck and other staff worked for some amount of time that included both overtime and holiday pay. *Id.* ¶¶ 15, 16. During this period, Defendants experienced a ransomware cyberattack. *Id.* ¶ 14; ECF No. 23, at 1. The ransomware rendered Defendants' payroll software completely inaccessible for their customers. ECF No. 1 ¶ 14 n.3. As a result of the cyberattack, the hospital could not accurately calculate the hours of Mr. Kroeck and other staff. *Id.* ¶ 19. According to Mr. Kroeck, he worked a total of 134 hours but was only compensated for 80 hours of work. *Id.* ¶ 20. Mr. Kroeck and other staff were required to record their hours manually along with adding their hours into Defendants' software. *Id.* ¶ 24.

Mr. Kroeck's Complaint includes four claims against Defendants. In Counts I and II, he alleges that Defendants violated the PMWA and the FLSA by failing to pay him and other staff for all hours worked. In Count IV, he asserts that Defendants breached their contract with the hospital, which harmed him and other staff as third-party beneficiaries of the contract. And in Count VI, he contends that Defendants negligently breached their duty to exercise reasonable care to protect the personal and financial information of Mr. Kroeck and other staff, which caused

wages to go unpaid and put them at an increased risk of becoming victims of identity theft crimes. *See generally* ECF No. 1.[3]

Defendants seek to dismiss the Complaint on multiple grounds: (1) Mr. Kroeck fails to establish an employer relationship that could support the PMWA and FLSA claims; (2) Mr. Kroeck cannot establish himself as a third-party beneficiary between the hospital and Defendants to support the breach of contract claim; and (3) Mr. Kroeck fails to plausibly allege a negligence claim, specifically that Defendants owed a duty, which resulted in concrete and compensable harm. *See generally* ECF No. 23.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

---

[3] The remaining counts—Count III and Count V—were claims against the hospital, which have since been dismissed with prejudice pursuant to a stipulation between the parties.

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss"). On the other hand, "[t]o prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense . . . a defendant must show that 'the defense is "apparent on the face of the complaint" and documents relied on in the complaint.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)).

Finally, when deciding a Rule 12(b)(6) motion and as noted above, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Thus, for the purpose of deciding the present Motion, the Court accepts as true the facts alleged in the Complaint and views those facts in the light most favorable to the plaintiff. *See Burtch*, 662 F.3d, at 220.

### III. Discussion

#### A. Dismissal of the FLSA and PMWA Claims is Warranted Under the *Enterprise* Test

Mr. Kroeck alleges that Defendants violated the FLSA and PMWA by failing to pay overtime wages. The FLSA requires employers to pay its employees an overtime premium rate of "one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207. Similarly, the PMWA requires employers to pay an overtime premium rate that is "not less than one and one-half times the employe's regular rate." 43 P.S. § 333.104(c). Given the similarities between the statutes, courts have analyzed FLSA and PMWA claims under the same framework. *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020); *see also Espinoza v. Atlas R.R. Constr., LLC*, 657 Fed. Appx. 101, 105 (3d Cir. 2016) ("When the PMWA 'substantially parallels' the FLSA, Pennsylvania and federal courts have used FLSA law for interpretative guidance because the statutes have similar purposes.").

The threshold question is whether Defendants can be considered to be an employer of Mr. Kroeck for purposes of the FLSA. There is no dispute that *the hospital* acted as an employer for Mr. Kroeck. ECF No. 1 at ¶ 12; ECF No. 23 at 2 (citing ECF No. 1 ¶14 n.3). Therefore, Mr. Kroeck must establish that Defendants, as the third-party payroll software providers for the hospital, acted as "joint employers" with the hospital for the purposes of supporting the FLSA and PMWA claims. *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012); *N.L.R.B. v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1123 (3d Cir. 1982); *Talarico v. Pub. P'ships, LLC*, 837 Fed. Appx. 81, 84 (3d Cir. 2020). Courts determine whether an organization is a joint employer by examining whether it exerted "significant control" over the employees. *In re Enter.*, 683 F.3d at 468; *N.L.R.B.*, 691 F.2d at 1123. To evaluate what constitutes "significant control," the primary test—known as the *Enterprise* test—weighs the following four

factors asking whether the alleged employer has: "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter.*, 683 F.3d at 469; *see also Talarico*, 837 Fed. Appx. at 84. These factors are non-exhaustive, and courts should ultimately look to the economic realities of the relationship. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Talarico*, 837 Fed. Appx. at 84 (quoting *In re. Enter.*, 683 F.3d at 469).

Under the first *Enterprise* factor, Mr. Kroeck includes no allegations that Defendants had the ability to hire or fire him or other hospital staff. Taking Mr. Kroeck's allegations as true, Defendants merely outsourced a payroll software for the hospital to use. Similarly, under the second and third *Enterprise* factors, Mr. Kroeck did not allege that Defendants could implement work rules and conditions or engage in the day-to-day supervision of hospital staff. The first three factors therefore weigh heavily in Defendants' favor that no employment relationship existed between the parties.

Mr. Kroeck argues that the fourth *Enterprise* factor—the control of employee records, which includes the handling of payroll, insurance, and taxes—does demonstrate that Defendants acted as an employer by providing payroll software to the hospital. Mr. Kroeck alleges that Defendants' technological failure prevented him from receiving his wages. However, Mr. Kroeck also asserts that staff "were not paid due to the refusal of their supervisors to compute their time without the aid of [Defendants'] software." ECF No. 1 ¶ 19. This allegation indicates that the hospital had the ability to pay its staff, absent the software at issue, but chose not to. Moreover, Mr. Kroeck contends that all hospital staff manually kept track of their hours worked, so recording hours with Defendants' software was not the only method of timekeeping for payroll purposes.

ECF No. 1 ¶ 24.  Therefore, taking the well-pleaded allegations as true, the fourth factor appears to be neutral in the joint-employer analysis.

A number of District Courts within the Third Circuit have dismissed FLSA cases against third-party providers that only administered benefits or issued paychecks, like Defendants here. *See, e.g.*, *Pride v. Wal-Mart Stores East, LP*, No. 19-cv-680-JMY, 2019 WL 5862171, at *3–4 (E.D. Pa. Nov. 8, 2019) (holding a third-party medical and benefits administrator was not a joint employer under the FMLA); *Savakus-Malone v. Piramal Critical Care, Inc.*, No. 5:180-cv-05063, 2019 WL 2897697, at *2–6 (E.D. Pa. July 3, 2019) (finding an independent staffing agency that issued paychecks was not a joint employer under the FLSA); *cf. Talarico*, 837 Fed. Appx. at 85–86 (holding an employment relationship could exist when an alleged employer set conditions of the workers' employment, scheduled workers' hours, implemented work rules, and required workers to complete trainings and attend meetings); *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014) (finding plausible an employment relationship when a defendant set working conditions but surmising that this would be different if defendant merely issued the pay stubs).  Defendants merely provided the software that the hospital uses for payroll and exerted no control over the employees' working conditions.

Lastly, the economic realities of the relationship also demonstrate that Mr. Kroeck did not consider Defendants to be an employer.  In his Complaint, he introduces the hospital as one that "employs individuals who are paid on an hourly basis and provide[s] health care and other services to [their] customers." ECF No. 1 ¶ 10.  He states that he "is employed by [the hospital] by way of an oral employment contract." ECF No. 1 ¶ 12.  By contrast, he introduces Defendants as entities that "provide human relations services to businesses including [the hospital] with several

7

employees to bring all the timekeeping data into a payroll system with the push of a button." ECF No. 1 ¶ 12. The pleadings tellingly have no reference to Defendants as Mr. Kroeck's employer.

Taking the Complaint's well-pleaded allegations as true, Mr. Kroeck has failed to plead that Defendants are a joint employer under *Enterprise*, and the Court will grant Defendants' Motion to Dismiss as to Mr. Kroeck's FLSA and PMWA claims in Counts I and II. However, the Court will grant Mr. Kroeck leave to amend Counts I and II.

### B. Dismissal of Count IV is Not Warranted as Mr. Kroeck May be a Third-Party Beneficiary of the Contract Between the Hospital and Defendants

Mr. Kroeck alleges a breach of contract claim against Defendants. Mr. Kroeck notes that he has an "oral employment contract" with the hospital. ECF No. 1 ¶ 12. Defendants, in turn, had an agreement with the hospital to provide payroll software. ECF No. 23 at 11. However, no agreement exists between Mr. Kroeck and Defendants. For that reason, the Court must determine whether Mr. Kroeck was a third-party beneficiary of the agreement between Defendants and the hospital.

The parties agree that Pennsylvania law applies to Mr. Kroeck's breach-of-contract claim against Defendants. *See Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999 (holding when parties agree, either explicitly or implicitly, on the relevant law to apply, the district court in a diversity action shall apply that law). Pennsylvania courts have adopted a two-part test to determine whether a party is an incidental third-party beneficiary of the contract. *See Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983) (adopting the definition of an intended and incidental beneficiary under § 302 of the Restatement (Second) of Contracts)). First, a party is a third-party beneficiary if its right to performance "effectuate[s] the intention of the parties." *Id.* This first step examines the motivation of the contracting parties and grants the court discretion to assess the

appropriateness of recognizing a third-party beneficiary. *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992); *Est. of Agnew v. Ross*, 152 A.3d 247, 260 (Pa. 2017).

The second requirement a party must meet to establish that it is a third-party beneficiary is to demonstrate either that the promisor's performance "will satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Guy*, 459 A.2d at 751 (quoting Restatement (Second) of Contracts §302 (1979)); *Scarpitti*, 609 A.2d at 150. In other words, Mr. Kroeck must show that Defendants' performance—providing payroll software to the hospital—will satisfy the hospital's obligation to pay its employees.

Here, Mr. Kroeck has alleged that he is a third-party beneficiary. ECF No. 1 ¶ 50 ("Plaintiff and other class members . . . were third party beneficiaries of a payroll agreement with [Defendants]."). However, the contract between Defendants and the hospital is not yet part of the record. Thus, the court cannot determine what the contracting parties' expectations were, including whether providing wages to hospital staff was a motivating purpose for contracting with payroll software providers. Accordingly, the Court will deny the Motion to Dismiss with respect to Count IV.

      **C.**     **Dismissal of Count VI is Warranted as Mr. Kroeck Fails to Allege Certain Elements of his Negligence Claim**

In Count VI, Mr. Kroeck alleges that Defendants were negligent because they had a duty to exercise reasonable care to protect his personal and financial information from cyberattacks. The parties agree that Pennsylvania law applies to this claim. *See Commonwealth Cap. Corp. v. Getronics, Inc.*, 147 Fed. Appx. 253, 255 (3d Cir. 2005) (noting when parties agree on the state law to apply, then the District Court shall apply that law). Under Pennsylvania law, a plaintiff must establish the following elements to succeed on a negligence claim: (1) a legally recognized

duty or obligation; (2) that the defendant breached that duty; (3) a causal connection between defendant's conduct and the alleged injury; (4) actual and compensable damages. *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 596 (Pa. 2012); *Shamnoski v. PG Energy*, 858 A.2d 589, 602 (Pa. 2004).

Under Pennsylvania law, the economic loss doctrine prevents parties from recovering on a negligence claim that results solely in economic damages without any personal injury or property damage. *Longenecker-Wells v. Benecard Servs.*, 658 Fed. Appx. 659, 661 (3d Cir. 2016); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008); *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 842–43 (Pa. 2009); *Aikens v. Balt. & Ohio R.R. Co.*, 501 A.2d 277, 278–79 (Pa. Super. 1985). That said, a plaintiff can overcome the economic loss doctrine by establishing that the defendant owed him a legal duty "that exists independently from any contractual obligations between the parties." *Dittman v. Univ. of Pittsburgh Med. Ctr.*, 196 A.3d 1036, 1054 (Pa. 2018); *Bilt-Rite Contrs., Inc. v. Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005).

In this case, Mr. Kroeck alleges two forms of damages: unpaid wages and an increased risk of identity theft. Defendants argue that these categories of damages are barred from recovery in a negligence suit under the economic loss doctrine. To overcome this bar, Mr. Kroeck argues that Defendants, as payroll software providers in possession of personal identifying information, owed a special duty to Mr. Kroeck and other hospital staff to prevent cyberattacks.

Defendants are correct that the type of harm that Mr. Kroeck seeks to redress is purely economic. Historically, unpaid wages, absent any personal injury or property damage, could not support a negligence claim as they represented a purely economic loss. *Aikens*, 501 A.2d at 278–79; *Adams v. Cooper Beach Townhome Cmtys., LP*, 816 A.2d 301, 305 (Pa. Super. 2003); *Azur*

10

*v. Chase Bank, USA*, 601 F.3d 212, 222–23 (3d Cir. 2010). The Pennsylvania Superior Court has reasoned that allowing "a cause of action for negligent cause of purely economic loss would be to open to the door to every person in the economic chain of the negligent person or business to bring a cause of action." *Aikens*, 501 A.2d at 279 (describing this as creating an "outstanding burden" and "a danger to our economic system").

Similarly, courts have described the increased risk of identity theft as a purely economic loss. *Sovereign Bank*, 533 F.3d at 175–76; *Longenecker-Wells v. Benecard Servs.*, No. 1:15-CV-422, 2015 WL 5576753, at *4–5 (M.D. Pa. Sept. 22, 2015), *aff'd*, 658 Fed. Appx. 659 (3d Cir. 2016). Prior to the recent Pennsylvania Supreme Court decision in *Dittman*, the Third Circuit recognized that Pennsylvania law entirely barred this type of harm from recovery under a negligence suit. *See Longenecker-Wells*, 658 Fed. Appx. at 661. The Third Circuit reasoned that if someone needed to "right the ship" of the economic loss doctrine and expand its exceptions, that would be a job for the Pennsylvania Supreme Court—not the federal court. *Id.* at 662.

Since then, however, the Pennsylvania Supreme Court has spoken and carved out broader exceptions to the economic loss doctrine. *Dittman*, 196 A.3d at 1050–51. Specifically, the Pennsylvania Supreme Court held that even in cases involving purely economic losses, a negligence claim may survive if the plaintiff can establish a legal duty that "exists independently from any contractual obligations between the parties." *Id.* at 1054–55; *Bilt-Rite*, 866 A.2d at 288. We must therefore determine whether Defendants had a legal duty to Mr. Kroeck and other hospital staff as a third-party payroll software provider.

As a general rule, those who take on an affirmative action have a duty to others to use reasonable care to prevent harm that arises out of that action. *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 14 (Pa. 2019). Pennsylvania law specifically recognizes those who collect sensitive

11

information as having a duty to implement security measures to prevent the foreseeable harm of a data breach. *Dittman*, 196 A.3d at 1056 (imposing a common law duty on those who store "personal and financial information" to protect that data). This duty would extend only to those individuals whose confidential information is kept on file.

Here, as Defendants note, Mr. Kroeck has not alleged that Defendants possessed his personal and financial information. Therefore, the Court will grant Defendants' Motion with respect to Count VI. However, the Court will provide him with leave to amend.

**IV.     Conclusion**

For the foregoing reasons, the Motion to Dismiss filed by Defendants UKG, Inc. and Kronos, Inc. is hereby GRANTED IN PART and DENIED IN PART as further set forth in the attached Order. Counts I, II, and VI of the Complaint is hereby DISMISSED WITHOUT PREJUDICE. Mr. Kroeck may file an amended complaint to attempt to cure the deficiencies identified herein, on or before October 5, 2022.

DATED this 21st day of September, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge